IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 18–cv–01976–KMT

PATRICK SMITH,

    Plaintiff,

v.

BILL ELDER as Sheriff of El Paso County Sheriff's Office,

    Defendant.

---

## ORDER

---

    Before the court is "Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c)." (["Motion"], Doc. No. 27.)  Plaintiff has responded in opposition to the Motion, and Defendant has replied.  (["Response"], Doc. No. 32; ["Reply"], Doc. No. 38.)  For the following reasons, the Motion is GRANTED.

### STATEMENT OF THE CASE

    Plaintiff Patrick Smith, a former Deputy Sheriff with the El Paso County Sheriff's Office ["EPSO"], brings suit against the elected El Paso County Sheriff, Defendant Bill Elder ["Sheriff Elder"], alleging violations of Title VII of the Civil Rights Act of 1964, as amended ["Title VII"], 42 U.S.C. §§ 2000(e) *et seq.*.  (["Complaint"], Doc. No. 1 at ¶¶ 1, 7-8.)  Smith, who is African-American, began working for EPSO[1] in 2003.  (*Id.* at ¶¶ 11-12; Mot. 2 ¶¶ 4-5.)  At all

---

[1] EPSO is "a law enforcement organization, which operates under the authority of the Sheriff and is responsible for conducting various law enforcement and detention functions within El Paso County, Colorado."  (Compl. ¶ 9; Mot. 2 ¶ 3.)

times relevant to this lawsuit, Smith was assigned to a position at the El Paso County Jail ["ECJ"].  (Compl. ¶ 13; Mot. 2 ¶ 8.)

The first ten years of Smith's employment appear to have been without incident.  Then, on June 11, 2013, Plaintiff was involved in a "use-of-force incident," while on duty at ECJ, where he was accused of using "an inappropriate amount of force" against an ECJ inmate.  (Resp. Ex. 6, Doc. 31-2; Resp. Ex. 13, Doc. No. 31-8, at 2.)  The EPSO's Internal Affairs Unit, upon its investigation of the incident, determined that Plaintiff had violated its policies concerning use-of-force, unbecoming conduct, and disobedience to orders.  (Resp. Ex. 12, Doc. No. 31-7; *see* Mot. Ex. A ["Requests for Admission"], Doc. No. 27-1, at 3-4, RFA No. 9.)  Those findings were ultimately sustained, and the termination of Plaintiff's employment was recommended.  (Mot. Ex. B at 6-9 ["Breister Affidavit"], Doc. No. 27-2, at ¶ 12; Resp. Ex. 13, Doc. No. 31-8.)  In lieu of termination, however, Plaintiff was suspended without pay, temporarily demoted, and placed on probation.  (Breister Aff. ¶ 12; Resp. Ex. 29, Doc. No. 32-10, at 3.)

In the interim, on July 19, 2013, Plaintiff and three other EPSO employees, while off duty, were involved in a physical fight at a local bar.  (Breister Aff. ¶ 15; Resp. Ex. 8, Doc. No. 31-3.)  Following an internal investigation into that incident, Plaintiff, once again, received sustained findings of unbecoming conduct and disobedience to orders.  (Req. for Admis. 4 at RFA No. 10; Resp. Ex. 9, Doc. No. 31-4; Resp. Ex. 11, Doc. No. 31-6.)

Following these events, in early 2017, Smith's coworker, Deputy Jane Roe ["Deputy Roe"], made two respective complaints of sexual harassment and retaliation against EPSO.[2] (Mot. Ex. B at 1-3 ["Matter Affidavit"], Doc. No. 27-2, at ¶¶ 5, 8.)  Both complaints were investigated by El Paso County Human Resources ["HR"] representative, Harmony Matter ["Ms. Matter"].  (*Id.* at ¶¶ 6, 9.)  On March 23, 2017, Ms. Matter informed Smith that she "needed to interview him" regarding Deputy Roe's retaliation allegations, specifically.  (*Id.* at ¶ 12.)  Smith was advised that "his cooperation was expected per EPSO Policy."  (*Id.*)  That same day, Plaintiff provided a statement to Ms. Matter, which "include[ed] his observations of how Deputy Roe had been treated."  (Compl. ¶ 18; *see* Matter Aff. ¶ 13.)  Six weeks later, on May 3, 2017, Ms. Matter completed her investigation into Deputy Roe's retaliation complaint.  (Matter Aff. ¶¶ 16-17.)  At no time did Ms. Matter disclose Plaintiff's involvement in the investigation to EPSO.  (*Id.* at ¶¶ 11, 14-15.)

On May 12, 2017, shortly after 1:00 a.m., Plaintiff was involved in another use-of-force incident with an ECJ inmate.  (Compl. ¶ 24; Mot. 3 ¶ 13; Resp. Ex. 23, Doc. No. 31-13.)  Eight and a half hours later, at approximately 9:30 a.m., the EPSO Undersheriff, Joseph Breister ["Undersheriff Breister"], reviewed video footage of the incident, and concluded that Smith's actions "appeared" to involve "the application of unlawful excessive use of force against [the ECJ inmate]."  (Breister Aff. ¶¶ 10-11.)  Undersheriff Breister referred the matter to the

---

[2] Roe's complaints concerned the actions of another ESPO employee, who is not a party to this lawsuit.  (Resp. Ex. 15, Doc. No. 32-7, at 195:15-18, 245:6-7.)

Professional Standards Unit ["PSU"] [3] for further investigation. (*Id.* at ¶¶ 16-17; *see* Resp. Ex. 23, Doc. No. 31-13.) Plaintiff was then placed on "immediate paid administrative leave," pending the completion of the PSU investigation. (Breister Aff. ¶ 16; Compl. ¶ 26; Mot. 3 ¶ 14.)

Shortly thereafter, on May 15, 2017, Deputy Roe sent an email to El Paso County HR, stating her belief that Plaintiff "was being retaliated against for his involvement in the investigation of her sexual harassment and retaliation complaints," and that he was "being discriminated against because of his race." (Compl. ¶¶ 44-45, 48; ["Answer"], Doc. No. 15, at 6-7; *see* Matter Aff. ¶ 20.) That same day, Plaintiff also sent an email to Ms. Matter, in which he stated that he "felt that he was being treated unfairly by the [EPSO] chain of command[.]" (Compl. ¶¶ 48-49; Answer 7; Matter Aff. ¶ 22.)

On June 5, 2017, PSU completed its investigation into the use-of-force allegations against Plaintiff. (Compl. ¶ 28; Mot. 3 ¶ 17.) The investigative findings were submitted to Undersheriff Breister, who then referred the results to the Disciplinary Action Board ["DAB"], pursuant to EPSO policy. (Breister Aff. ¶ 18; Resp. Ex. 23, Doc. No. 31-13.)

Two days later, on June 7, 2017, Plaintiff, by email, lodged a formal complaint of race discrimination and retaliation against his employer with El Paso County HR. (Compl. ¶¶ 59-60; Answer 7-8; Matter Aff. ¶ 23.) In the email, Plaintiff referenced a recent use-of-force incident involving two white EPSO deputies, as "evidence that he was being subjected to race discrimination." (Compl. ¶ 62; Answer 8.)

---

[3] PSU, also known as "Internal Affairs," is an EPSO division that conducts internal investigations into employees and their actions. (Compl. ¶ 27; Mot. 3 ¶ 17.) The record is unclear as to whether, or to what extent, PSU is related to the Internal Affairs Unit.

4

Two days later, on June 9, 2017, the DAB held a hearing to review the PSU's findings as to Plaintiff's use-of-force.  (Mot. Ex. B, Doc. No. 27-2, at 10 ¶ 4, 12 ¶ 3, 14 ¶ 3, 16 ¶ 3, 18 ¶ 3; Resp. Ex. 28, Doc. No. 31-18.)  All four DAB members, including Smith's chosen representative, recommended the termination of Smith's employment, "based on the May 2017 incident and based on [] Smith's prior sustained Use of Force history."  (Mot. Ex. B, Doc. No. 27-2, at 10 ¶ 7, 12 ¶¶ 5-6, 14 ¶¶ 5-6, 16 ¶¶ 5-6, 18 ¶¶ 5, 7-8; Resp. Ex. 28, Doc. No. 31-18.)

In accordance with EPSO policy, the DAB's termination recommendation was then forward to Sheriff Elder, who scheduled to meet with Smith on June 12, 2017.  (Breister Aff. ¶ 9; Mot. Ex. C, Doc. No. 27-3, at 6-7; Mot. Ex. D, Doc. No. 27-4, at 1.)  Smith, however, did not meet with Sheriff Elder.  (Breister Aff. ¶ 20.)  Rather, by email dated June 12, 2017, Plaintiff resigned from his position with EPSO.  (Compl. ¶ 68; Mot. 4 ¶ 25; Mot. Ex. D, Doc. No. 27-4, at 2.)  Plaintiff now alleges that he was "forced to resign his employment under threat of termination," due to his race, as well as "his opposition to discrimination and participation in an investigation of a complaint of discrimination."  (Compl. ¶¶ 1, 86.)

Based on these events, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ["EEOC"].  (*Id.* at ¶ 4; Answer 1.)  On August 3, 2018, after receiving notice of his right to sue from the EEOC, Plaintiff filed this action, asserting Title VII claims for race discrimination and retaliation.  (Compl. ¶¶ 5-6, 88-103.)  At the close of discovery, on September 12, 2019, Defendant moved for summary judgment on both of Plaintiff's claims.  (Mot. 1.)

5

## STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but instead, must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).

"A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury," or conversely, whether the evidence "is so one-sided that one party must prevail as a matter of law. *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (quoting *Anderson*, 477 U.S. at 251-52). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160

(10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In evaluating a motion for summary judgment, a court may consider admissible evidence only. *See Johnson v. Weld Cty.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. However, this standard does not require the court to make unreasonable inferences in favor of the non-moving party. *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008). The nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994).

## ANALYSIS

### A. *The Legal Standard for Title VII Discrimination and Retaliation Claims*

Under Title VII, it is unlawful for an employer to discriminate against an employee because of his "race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e)-2(a). In addition, pursuant to 42 U.S.C. § 2000e-3(a), it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]."

Claims of employment discrimination or retaliation can be established through either direct or circumstantial evidence. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017) (discrimination); *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1226 (10th Cir. 2008)

(retaliation). If a plaintiff relies on circumstantial evidence, as Smith does here, his claim is analyzed under the *McDonnell Douglas* burden-shifting framework. *Singh v. Cordle*, 936 F.3d 1022, 1037, 1042 (10th Cir. 2019). Under this framework, the plaintiff has the initial burden of making a *prima facie* case. *Id.* at 1037 (citing *DePaula*, 859 F.3d at 969-70). If he does so, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* (quoting *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012)). Once such a showing has been made, the burden shifts back to the plaintiff to prove that the employer's proffered reason is a pretext. *Id.* (quoting *Daniels*, 701 F.3d at 627).

## B. The Race Discrimination Claim

To establish a *prima facie* case of race discrimination under Title VII, a plaintiff must show: (1) membership in a protected class; (2) qualifications for the position at issue; (3) an adverse employment action; and (4) the adverse employment action "occurred under circumstances which give rise to an inference of unlawful discrimination." *Singh*, 936 F.3d at 1037 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000)).

Here, Defendant does not dispute, for purposes of the summary judgment analysis, that Plaintiff has met the first two elements of his *prima facie* case. (Mot. 5.) Instead, Sheriff Elder contends that Smith cannot satisfy the third and fourth element of his claim. (*Id.*) Specifically, as to the third element, Defendant argues that "[s]ince Plaintiff voluntarily resigned, he cannot claim he was subject to adverse employment action." (*Id.* at 6.) Sheriff Elder likewise argues that Smith cannot prove the fourth element of his claim, because there is no evidence "that he was treated less favorably that similarly situated individuals." (*Id.*)

*Adverse Employment Action*

"[T]he substantive discrimination provisions of Title VII are limited 'to adverse actions that affect employment or alter the conditions of the workplace.'" *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 62 (2006)) (alteration omitted). In the Tenth Circuit, the phrase "adverse employment action" is "liberally" defined, in that "[s]uch actions are not simply limited to monetary losses in the form of wages or benefits." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) (quoting *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998)). In determining whether an employee has suffered an adverse employment action, the court must "take a case-by-case approach, examining the unique factors relevant to the situation at hand." *Id.* At minimum, a plaintiff must show an "objective demotion," or some other "significant change in employment status," such as termination, a decrease in pay, a reassignment with markedly different responsibilities, or "a decision causing a significant change in benefits." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 635 (10th Cir. 2012) (quoting *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007)); *accord Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017). "Proof of either actual or constructive discharge satisfies this requirement." *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 979 (10th Cir. 2008) (citation omitted). But a "mere inconvenience or an alteration of job responsibilities" will not suffice. *Hiatt*, 858 F.3d at 1316 (quoting *Piercy*, 480 F.3d at 1203); *see Robinson v. Cavalry Portfolio Servs., LLC*, 365 F. App'x 104, 114 (10th Cir. 2010) ("While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse

9

action. Otherwise, minor and even trivial employment actions . . . would form the basis of a discrimination suit.").

Turning to its analysis, the court considers, first, whether the evidence establishes Plaintiff's actual discharge. "An actual discharge . . . occurs when the employer uses language or engages in conduct that would logically lead a prudent person to believe his tenure has been terminated." *Fischer*, 525 F.3d at 979-80 (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 88 (2d Cir. 1996)). "An actual discharge does not occur, however, when the employee chooses to resign rather than work under undesirable conditions." *Id.* at 980 (citation omitted).

Here, the record unequivocally shows that Smith resigned from his position with EPSO. (*See* Compl. ¶ 68; Answer 8; Mot. Ex. D, Doc. No. 27-4, at 2.) Indeed, in his June 12, 2017 email, Smith explicitly states: "This Letter serves to confirm that I am resigning my position from the El Paso County Sheriff's Office effective immediately." (Mot. Ex. D, Doc. No. 27-4, at 2.) Therefore, because Smith resigned, he cannot rely on a theory of actual discharge to prove his *prima facie* case. *See Fischer*, 525 F.3d at 980.

"Even if an employee resigns, the plaintiff may still satisfy the adverse employment action requirement by demonstrating that he was constructively discharged." *Fischer*, 525 F.3d at 980. However, the burden to establish constructive discharge "is substantial." *Id.* (citing *EEOC v. PVNF, LLC*, 487 F.3d 790, 805 (10th Cir. 2007)). "A constructive discharge occurs only 'when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel compelled to resign.'" *Id.* (quoting *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004)). "The question is not whether the employee's resignation resulted from the employer's actions, but whether the

employee had any other reasonable choice but to resign in light of those actions." *Potts v. Davis Cty.*, 551 F.3d 1188, 1194 (10th Cir. 2009) (quoting *Tran v. Trs. of State of Colls. of Colo.*, 355 F.3d 1263, 1270 (10th Cir. 2004)). In other words, the employee must show that he had "*no other choice* but to quit." *Id.* (quoting *Yearous v. Niobrara Cty. Mem. Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997)) (emphasis in original). Whether an employee's resignation is voluntary is evaluated objectively, based on the totality of the circumstances. *Fischer*, 525 F.3d at 980 (citing *Exum*, 389 F.3d at 1136).

Here, Smith argues that he was "coerced" into resigning, even though he "was given the option of resigning in lieu of termination," because he was informed beforehand that Sheriff Elder "would not overturn the DAB's termination recommendation." (Resp. 14.) As evidence of his constructive discharge, Smith points to his own deposition testimony, in which he described the circumstances of his resignation, as follows:

> A. After talking to Lisa Kirkland, she stated that Sheriff Elder wouldn't . . . overturn the termination - - the sustained termination, so at that point, I figured it was . . . necessary to - - she said it would be easier to resign than to have a termination on my . . . background, so I thought that was the best thing to do.
>
> Q. So, you chose not to meet with Sheriff Elder to make a plea for - -
>
> A. Correct. After Ms. Kirkman informed me of . . . her expert opinion, I didn't want to take the risk of having a termination . . . on my record.

(Resp. Ex. 15, Doc. No. 32-7, at 183:3-18.) Plaintiff also points to his former employer's EEOC Position Statement, in which EPSO "admits Mr. Smith chose to resign on June 12, 2017 rather than being terminated." (Resp. Ex. 29, Doc. No. 32-10, at 31-30.) Smith argues that this statement is "an admission" that he "would have been terminated if he had not resigned." (Resp. 14.)

11

This evidence falls short of creating a material fact issue as to whether Plaintiff's resignation was objectively involuntary. First, the uncontroverted record shows that, prior to his resignation, Smith had the opportunity to meet with Sheriff Elder to appeal the DAB's termination recommendation. (Mot. Ex. C, Doc. No. 27-3, at 6-7; Mot. Ex. D, Doc. No. 27-4, at 1.) Instead of meeting with Sheriff Elder, however, Plaintiff chose to resign. (*See* Mot. Ex. D at 2.) Thus, at the time of his resignation, Plaintiff had at least one alternative to quitting that was still available to him. *See Exum*, 389 F.3d at 1136 (finding an employee's resignation to be voluntary, where the evidence showed that, "[i]nstead of resigning, [he] could have chosen to comply with his superior's order or, alternatively, refused to comply and faced the possible consequences of that choice"); *see also Potts*, 551 F.3d at 1194 (stating relevant factors to include "whether [the employee] was given some alternative to resignation").

Importantly, Plaintiff has failed to show that his working conditions were "so intolerable" that he was forced to quit. For instance, there is no evidence that any supervisor encouraged Smith to quit, or actively undermined his ability to perform his job. *See Fischer*, 525 F.3d at 982. Plaintiff does allege that EPSO exhibited a "culture of discrimination," and that black employees, including himself, "experienced race discrimination at EPSO." (Resp. 2.) As evidence, Plaintiff has submitted deposition testimony from his former coworker, Detective Tremaine White. (Resp. Ex. 3 ["White Deposition"], Doc. No. 32-3.) Detective White, who is black, testified that, on two separate occasions, he overheard white EPSO employees use racial slurs to refer to black individuals. (*Id.* at 186:16-189:2.) White further testified that his supervisor once required him to get a haircut, which he deemed to be a "discriminatory" and "race specific" request. (*Id.* at 23:6-17, 194:15-195:6.) But evidence of discriminatory remarks

12

and innuendo, which were directed at another employee, cannot form the basis of a viable constructive discharge claim.  *See Fischer*, 525 F.3d at 982 ("Evidence that Forestwood engaged in discriminatory acts against other employees or potential employees, however, is not enough to prove constructive discharge."); *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1384, 1386 (10th Cir. 1991) (finding that an Iranian plaintiff failed to establish that his workplace conditions were sufficiently intolerable to prove constructive discharge, despite evidence that his employer made disparaging remarks about his ethnicity, ordered him to take a polygraph examination due to his national origin, belittled and mistreated him at company seminars, and ordered him to fire other Iranian employees); *see also Anderson v. Clovis Mun. Schs.*, 265 F. App'x 699, 707 (10th Cir. 2008) ("Anderson may have felt 'ganged up on' and 'alone oftentimes,' but 'given the objective standard, an employee's subjective feelings or beliefs are not relevant in a constructive discharge claim.").  For those reasons, Plaintiff has failed to show that he was constructively discharged.

In his Complaint, Plaintiff also alleges the following employment actions to have been unlawfully motivated by his race and protected activity: (1) his placement on paid administrative leave,[4] pending completion of the PSU investigation; (2) the referral of the PSU's investigatory findings to the DAB; and (3) the DAB's recommendation to terminate his employment.  (Compl. ¶¶ 55, 69, 86.)  However, none of these actions rises to the level of an "adverse employment action" under Title VII.  First, placement on investigatory paid administrative leave is not

---

[4] Plaintiff alleges that he was placed on unpaid administrative leave.  (Compl. ¶ 43.)  However, the uncontroverted summary judgment evidence shows that he was, in fact, placed on paid administrative leave.  (Mot. Ex. B, Doc. No. 27-2, at 8 ¶ 16.)  As such, there is no real dispute on that issue.

independently actionable as discrimination, where it causes no change to an employee's pay or benefits. *See Juarez v. Utah*, 263 F. App'x 726, 737 (10th Cir. 2008) (affirming that paid administrative leave is a not a materially adverse action); *Talbott v. Pub. Serv. Co. of N.M.*, No. 18-1102 SCY/LF, 2020 WL 2043481, at *13, 15 (D.N.M. Apr. 28, 2020) ("[B]eing placed on paid administrative leave pending an investigation does not constitute an adverse action[.]"); *see also Lincoln v. Maketa*, 880 F.3d 533, 542 (10th Cir. 2018) (holding that, for purposes of qualified immunity, "placement on paid administrative leave" is not "a clearly established adverse employment action"). And, there is no evidence that either the PSU's investigation, itself, or the referral of the PSU's findings to the DAB, tangibly altered the terms or conditions of Smith's employment. *See Carrero v. Robinson*, No. 05-cv-02414-MSK-CBS, 2007 WL 1655350, at *10 (D. Colo. June 5, 2007) (holding that a workplace investigation, by itself, did not constitute an adverse employment action, where the investigation "did not result in any change to the terms or conditions of the Plaintiff's employment"). Nor does the record show that Plaintiff suffered any discernable loss in compensation, duties, or benefits from the DAB's non-binding termination recommendation. *See Martinez v. City & Cty. of Denver*, No. 08-cv-01503-RBJ-MJW, 2012 WL 3842616, at *22 (D. Colo. Sept. 5, 2012) (finding that reports recommending suspension were not "adverse employment actions" under Title VII, because the reports "were not final and had no effect on Detective Rojas"); *see also Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1214 (10th Cir. 2003) (holding that a supervisor's "threat" to transfer an employee was not actionable under Title VII, because it "did not in itself adversely affect" that individual's employment, given that the supervisor "had no authority to transfer" the employee).

On this record, then, Plaintiff has failed to raise a genuine issue of material fact on whether he suffered an adverse employment action. Without evidence of an adverse employment action, Plaintiff cannot establish a *prima facie* case of discrimination under Title VII. As a result, summary judgment is warranted as to this claim. As such, there is no need to address Defendant's other arguments for dismissal.

## C. *The Retaliation Claim*

Smith alleges that he was unlawfully retaliated against for "participating in the investigation of Deputy Roe's sexual harassment and retaliation complaints," as well as for his "very vocal" support of Deputy Roe, his "opposition to discrimination and harassment in the workplace," and "his own complaint of race discrimination to [HR] on June 7, 2017." (Compl. ¶¶ 1, 20; Resp. 24.) Sheriff Elder now moves to dismiss the retaliation claim, on the basis that Smith cannot establish that he was subject to any materially adverse action. (Mot. 10.) Defendant also argues that Plaintiff cannot show a causal connection between a protected activity and retaliatory conduct. (*Id.* at 11.)

To establish a *prima facie* retaliation claim under Title VII, a plaintiff must show: (1) engagement in activity protected under Title VII; (2) a "materially adverse" employment action; and (3) a causal connection between the protected activity and the materially adverse employment action. *Singh v. Cordle*, 936 F.3d 1022, 1042 (10th Cir. 2019) (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)). "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). In other words, it must be proven "that the

Case 1:18-cv-01976-KMT   Document 45   Filed 09/08/20   USDC Colorado   Page 16 of 20

unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.*

Here, even assuming Smith could prove that a materially adverse action was taken against him, he has failed to identify competent summary judgment evidence to establish a "but-for" causal connection under Title VII. To establish the requisite causal connection, Smith must show "that the decisionmakers took action against him out of a desire to retaliate for his formal discrimination complaints." *Singh*, 936 F.3d at 1043 (citing *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008)). "As a prerequisite to this showing, [Smith] must first come forward with evidence from which a reasonable factfinder could conclude that those who decided to [take adverse action against] him had knowledge of his protected activity." *Id.*

In support of his motion for summary judgment, Sherriff Elder has submitted evidence to show that no decisionmaker with respect to any of the claimed adverse actions—to investigate the May 2017 use-of-force incident, to refer the matter to PSU, to make excessive force findings against Plaintiff, to sustain those findings, or to recommend the termination of Plaintiff's employment—knew that Plaintiff had been involved in the investigation into Deputy Roe's complaints. (*See* Mot. 11.) Specifically, Sheriff Elder has produced affidavits from all four DAB members, each of whom affirmed that, at the time of their decision, they had "no knowledge whether or not Mr. Smith supported, participated, or complained of any harassment relating to former Deputy Jane Roe or relating to himself." (Mot. Ex. B, Doc. No. 27-2, at 10 ¶ 8, 12 ¶ 8, 14 ¶ 8, 16 ¶ 8, 18-19 ¶ 10.) Defendant has likewise submitted evidence to show that Undersheriff Breister "was unaware of any of [Smith's] involvement in either Roe complaint" when he made decisions to place Smith on paid administrative leave, and to refer the use-of-

16

force incident to PSU.  (Breister Aff. ¶¶ 22-23.)  In addition, Defendant has submitted an affidavit from Ms. Matter, in which she swears that no person within EPSO was ever made aware of Smith's participation in the HR investigation into Deputy Roe's complaints.  (Matter Aff. ¶¶ 11, 14-15, 25.)

Smith, in response, argues that the El Paso County Attorney, Lisa Kirkman, was "present throughout the investigation of Dep. Roe's sexual harassment and retaliation complaints and was advising the Sheriff and keeping him and [the Undersheriff] informed of the investigation." (Resp. 25.)  As evidence, Plaintiff has submitted deposition testimony from Deputy Roe, in which she averred that Lisa Kirkman was, in fact, "there throughout the process" of the HR investigation into her complaints.  (Resp. Ex. 16 ["Roe Deposition"], Doc. No. 31-9, at 17:16-18:5.)  When asked whether Lisa Kirkman informed Sheriff Elder of Smith's participation in the investigation, Deputy Roe responded: "I know what they told me in that room; that Lisa was only there because she is advising the Sheriff and keeping him informed of my entire investigation.  My entire investigation includes everybody that came on record."  (*Id.* at 173:15-21.)  Plaintiff also references evidence showing that Undersheriff Breister "would occasionally get an update from either the County Attorney or [County HR]" regarding the status of the Roe investigation.  (Resp. Ex. 7 ["Breister Deposition"], Doc. No. 32-5, at 96:4-24.)

This evidence, even construed most favorably to Plaintiff, fails to raise a triable issue of fact as to whether an individual, who knew of Plaintiff's protected activity, took materially adverse action against him.  Although it appears that Sheriff Elder and Undersheriff Breister did come to learn of Smith's involvement in the Roe investigation, there is no evidence that either individual made a materially adverse decision as to his employment, specifically while in

possession of that knowledge. Indeed, the uncontroverted evidence shows that Undersheriff Breister did not know about Plaintiff's protected activity, at all, when he decided to place him on administrative leave and to refer the matter to PSU. (*See* Breister Aff. ¶¶ 22-23, 25.) And, to the extent Sheriff Elder was ever made aware of Smith's protected activity, no evidence shows that he took any materially adverse action against him.[5] *See Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1172-73 (10th Cir. 2014) (affirming summary judgment dismissal of a Title VII retaliation claim, where there was "no evidence of any [decisionmaker]'s knowledge of [the plaintiff's] protected activity," and "no reason to impute the HR Department's knowledge to any of them"); *Byorick v. Cas, Inc.*, No. 14-cv-2200-WJM-KMT, 2016 WL 8469748, at *6 (D. Colo. July 18, 2016) ("[T]he individual who took the materially adverse action was unaware of Plaintiff's protected opposition, while the individuals who were aware of it took only neutral actions. On this record there is not a sufficient causal link[.]").

Plaintiff also argues, in the alternative, that he has established causation based on the close temporal proximity between the protected activity and the adverse employment actions. (Resp. 24-25.) A "retaliatory motive may be inferred when an adverse action closely follows protected activity." *Zisumbo v. Ogden Reg. Med. Ctr.*, 801 F.3d 1185, 1200 (10th Cir. 2015) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)). Nevertheless, "a plaintiff who seeks to show causation in this manner still must present evidence that the decisionmakers *knew* of the protected conduct." *Singh*, 936 F.3d at 1043 (emphasis in original);

---

[5] In support of his retaliation claim, Plaintiff argues that he "was subjected to a materially adverse employment action when his employment was terminated." (Resp. 24.) However, as already discussed *supra*, the summary judgment record unequivocally shows that Smith voluntarily resigned from his position. As such, no materially adverse action occurred at that time.

18

*see also Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171-72 (10th Cir. 2006) (finding evidence that supervisor "knew" of the protected activity, at most, six weeks prior to termination allowed for an inference of causation). Here, there is no evidence of such decisionmaker knowledge. Plaintiff's argument as to temporal proximity is, thus, without merit.

On this record, then, the evidence does not raise a genuine issue of material fact regarding whether any decisionmaker knew of Plaintiff's protected conduct. As such, Plaintiff cannot establish the requisite causal connection to prove his *prima facie* case of retaliation. *See Singh*, 936 F.3d at 1043. Therefore, summary judgment is warranted on this claim, as well.

## C. *Legitimate, Non-Discriminatory Reason*

As a final matter, even assuming, in an abundance of caution, that Smith had established a *prima facie* case under Title VII, he has failed to rebut Sheriff Elder's legitimate, non-discriminatory reason for his actions during the use-of-force investigation. Defendant has presented evidence showing that all employment actions taken against Plaintiff were based on his "prior sustained Use of Force history." (Mot. Ex. B, Doc. No. 27-2, at 10 ¶ 6, 12 ¶ 5, 14 ¶ 5, 16 ¶ 5, 18 ¶ 7; Breister Aff. ¶¶ 16, 25.) Plaintiff has presented no evidence that raises a genuine issue on whether Defendant's proffered reason is pretextual.

Accordingly, it is

**ORDERED** that "Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c)" (Doc. No. 27) is **GRANTED**.  Plaintiff's case is hereby **DISMISSED with prejudice to a refiling**.

Dated this 8th day of September, 2020.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge